The next matter, number 24-1184, United States v. Victor Soto-Sanchez. At this time, would counsel to the appellant please introduce himself on the record to begin. Good morning. Edward Crane on behalf of Victor Soto-Sanchez. Can you move your mic higher so we can hear you better? Thank you. Yes, Your Honor. Is this good? Yes. Good morning. May it please the Court. Edward Crane on behalf of Victor Soto-Sanchez. The defendant's conviction should be reversed because the admission of the confidential informant's statement through Detective Cloutier violated the defendant's constitutional right to confrontation. Detective Cloutier testified that the informant told him that the defendant was a large-scale drug dealer who sold three different types of fentanyl along with crack cocaine. This statement was clearly testimonial and the government does not argue otherwise. I just want to try to understand how we're supposed to think about it. In Maher, there was no instruction saying you can't consider it for the truth, correct? Yes. So when there is such an instruction, does it make sense nonetheless to then somehow treat it as if it's being introduced as if it is for the truth? Why wouldn't the right way to handle this be to just, if you have a 403 problem, with this much evidence being put in to establish it for a non-truth reason because of its prejudice, make a 403 objection? But why is it right to think of it being introduced for something that everyone's being told is not being introduced for that? Well, I think that's a good question that should be asked of the government, frankly. No, you're the one who would make the 403 objection and you didn't. So when you just make a confrontation clause objection, why isn't the right way to think of it? It just isn't one because it was not introduced for that purpose. If there's a 403 problem with it because it was a prejudicial way of introducing it for a non-truth, make a 403 objection. That may well succeed. But in the absence of one, then obviously there wasn't one. Your Honor, I certainly think that a 403 argument could have been raised here. I think the confrontation clause issue is a stronger one for the defendant. Well, what I'm asking is, is it? I mean, what authority suggests it is in a circumstance in which there's an instruction specifically telling the jury not to consider it for its truth? Is it still a confrontation clause issue? Right, well, why doesn't that just take the confrontation clause issue out of the domain and then what's left would be a 403 challenge if one wanted to bring one? Is there some authority? Because Maher doesn't present this issue since there was no instruction. Maher, I understand, if it just puts it in, right, no one tells you what it's for. Then the government post hoc says, oh, that wasn't for the truth. I can understand why there's a pretty good argument. Well, how do we know that? And it sure looks like it wasn't for the truth. Look at all of the stuff. But if the government were to say, I'm now putting this in. I'd like you to instruct the jury. It's not for the truth. It would seem strange to me to say it's nonetheless a confrontation clause problem. Why wouldn't it just be a 403 problem? That's my question. Is there something about this case that helps me see how, notwithstanding the instruction, it could be treated as a confrontation clause problem? Well, I think the limiting instruction is relevant to the prejudice. I don't think that the limiting instruction can turn what is inadmissible testimony into admissible testimony just by advising the jury how to treat the testimony. But the whole idea of the... I mean, it just collapses the confrontation clause in 403, doesn't it? I thought the idea of the confrontation clause is if it's being put in, doesn't it have to be put in for the truth in order to be a confrontation clause problem? Yes. Yes, Your Honor. So we have an instruction saying it's not being put in for that. So how can there be a confrontation clause problem? I think the problem is that, and Mar gets to this in the other cases that Mar relies on, is this potentially creates a huge gap here in the confrontation clause if simply a limiting instruction is all that's required to turn what is a damaging statement from a confidential informant who the defendant has no opportunity to cross examine. Well, why? If there's a 403 problem with it, then there's a 403 problem with it. But we assume juries listen to what it's being put in for. And if it's not being put in for the truth, what's the confrontation clause problem? Well, I think the confrontation clause issue is that the limiting instruction really doesn't solve the issue. It's still, how is the jury going to interpret this testimony? The jury hears this testimony that the confidential informant has said the defendant is a large... Do you have any, is there any case within the limiting instruction that has been treated as a confrontation clause problem? I'm unaware of that, Your Honor, but I will certainly look into it. And if I find one, I'll supply the court with it. Counsel, do you think it would depend, at least to some extent, on whether there's a strong argument that the information, in fact, was introduced not for the truth? Because here it seems, I think your position is what was introduced went far beyond what would have been necessary to serve the government's stated purpose for the testimony. And sort of an instruction saying something is black when it's white won't work, right? I mean, isn't that part of your argument, that the extent of the testimony here was much more than necessary to explain why this particular defendant ended up being investigated? Certainly, Your Honor. Isn't that the inquiry we do under 403? That's true of all 403 objections, which is, is all this prejudice and stuff is totally unnecessary for the purpose for which you were introducing it. And given how prejudiced it is in light of how little relevance it has for the purpose, that's why you would want to go 403. Every 403 objection we could say, oh, well, then actually you put it in for this other thing. So it wasn't, you know, it would fail on relevance. It just doesn't, that's the part I'm having trouble understanding. Well, I think that it is relevant, though. Justice Rickleman's question is in some way, I think, in answer to the question that the Chief Justice is presenting, which is, you know, we have to look at this testimony and really what it was introduced for. And if there was really a viable claim that this was introduced to explain to the jury why the police initiated the investigation in this case, if this was such a case where that explanation was truly required, then maybe the limiting instruction is helpful here. But in this case, the confidential informant statement that the defendant was a large-scale drug dealer was introduced to prove that the defendant was a large-scale drug dealer. I don't think there's any question about that. I know the government makes an argument that this was introduced to sort of rebut an argument that the police didn't do an adequate investigation. But Detective Claudia is the second witness called by the government. At this point, the defendant has made no argument that the investigation was inadequate. Certainly, I think this falls into the category of a case like Maher, where if the government wants to introduce or feels the need to introduce evidence or explain why the police initiated the investigation. The thing that in Maher is different, we don't know why it was introduced in Maher. Because nothing says why it was in there. So in that, precisely out of the concern that there's a confrontation-caused problem, Maher then says, well, let's look at the substance of it. And there's a perfectly good reason to think it was. But when you have an instruction, that's where I'm just not quite. And if there's some case that suggests you just overlook the instruction and then treat it. But otherwise, everything that you're saying, it seems like, is just the exact inquiry we would do under 403. I think my best response to that is simply that the limiting instruction is not adequate to turn this from a non-testimonial statement to a, or from a testimonial statement to a non-testimonial statement. I'm sorry, because we have a couple of cases today that have somewhat similar issues. But in this case, the limiting instruction in my memory is it comes, I don't know, 10, 50, 100 pages after the actual testimony. So, like, often you have a really clear question, right? The defense attorney says it's a confrontation clause issue. The government says, well, we're not, you know, we're not, we're introducing it to show that this is how the investigation started. You have an argument about, I think, how much testimony can happen. And then the testimony comes in and immediately the judge says exactly what Maher says you should say. You should consider this testimony in this way. Where did that happen in this case, the limiting instruction? The limiting instruction was given at the end of Detective Clodier's testimony. And what prompted it? I believe the discussion previous to, before he testified and there was the discussion as to whether this testimony was going to be admissible or not, I believe that there was. It was the objection of defense counsel, right, that prompted, but the district court on its own. When did the objection occur? The objection occurred prior to Detective Clodier, I believe he had taken a stand or just prior to. And the response was from the government, we're just putting it forward in order to have it for the truth, not for the truth, right? Yes. And then was, and the government ruled for the government on that point? Yes. So then the testimony goes forward, right? Yes. Was there a request for a limiting instruction by defendant at that time prior to the testimony starting? I don't believe so, no. And when the instruction then is given, is that just, the judge just decides to throw one out at that point? Or was there a request for one at that point? My recollection is that there was not a request by the defendant at the end of his testimony to issue a limiting instruction. The district court proposed it, I think, and the transcript shows that they went sort of back and forth, the defense counsel and the district court, about what it should say. But I think the district court. And was that prior to the, as part of the ruling at the outset as to whether the testimony could go forward? Or you're not sure? I believe so. I don't believe that the judge simply gave this instruction without any prior discussion. What I'm trying to figure out is did the defendant express any concern vis-a-vis when the instruction would be given in connection with the testimony? No. Okay. There was never any. In Marr, with respect to the way it came up there, was there an objection in Marr to the testimony being given? Yes, there was an objection. At the outset? On confrontation grounds? I'm not sure exactly when the objection occurred in Marr, but the error, the argument was certainly preserved. But you don't know what the timing of how that came up at that point? I'm unaware of exactly when the objection was raised in Marr. I just know that it was preserved. And we don't know why there was no instruction given there akin to the one given here? No. And I think, too, though, I think it is worth noting, as a practical matter, the idea that the jury could sit there, listen to what Detective Cloutier said the confidential informant told him about the defendant being a large-scale drug dealer, could listen to that testimony. And it's essentially at the outset of Detective Cloutier's testimony. Listen to the rest of Detective Cloutier's testimony and then be told at the end of his testimony that, oh, yeah, what the confidential informant said to Detective Cloutier, don't consider that for the truth. Just consider it for how it informed. I'm just telling you, if there was an objection in Marr and there was an objection here and then the instruction only came late, you'd say this is, in functional terms, not any different than Marr notwithstanding the instruction? Yes. And that's the last point on this. But you don't have a view as to exactly when the discussion about the instruction occurred and what defense counsel's position on when it should be given was? I don't. The instruction was given. There's certainly no objection from the defendant that the instruction should have been given earlier. Go ahead. Could we quickly jump to the enhancement issue? Yes. There are two statements. There's the first statement to the girlfriend, he told me not to tell you to say anything, and then there's a second, a cousin's message to the girlfriend to contact somebody for money. Could you consider the second statement in the context of the first, right? So look at them both together. Would it be reasonable, then, to conclude that the second statement could be reasonably interpreted as an attempt at a bribe or an attempt at some sort of influence for money? I think it could if there was any evidence about the timing of that second statement. There's no evidence. And is there any evidence in the record about timing? We know both occurred after the indictment came down, right? So that is obviously an important timing fact, but is there anything else? No, and it's simply, I mean, the way that the PSR reads, one might come to the conclusion that since it mentions the statement by Ortega first and then the contact by the cousin, that one happened after the other, that that's how it chronologically occurred. But I don't think one can draw that inference. There's no evidence as to when the second statement about being contacted for money comes in. So I think that that omission of timing is critically important, where you can't draw the inference that this is the defendant attempting to bribe Dusty not to say anything. Thank you.  Thank you, counsel. At this time, counsel for the appellate of the United States, please introduce yourself on the record to begin. Good morning. Brian Kleinborg for the government. May it please the Court. Your Honors, in Marr there was no objection to Was it on plain error in Marr? It was a plain error case. Marr was a plain error case. There was a limiting instruction, but it was a plain error case. There was a limiting instruction? There was a limiting instruction also in Marr. But the Court said we don't have to, you know, the Court said two things. There was no objection and the judge gave a limiting instruction. And so for those reasons, the Court went on to issue a warning to prosecutors in future cases to be aware not to cross the line, but the Court, it was a plain error case and the Court said the appellant could not establish that there was prejudicial error in that case. Counsel, why was this testimony offered in this case? It seems to go far beyond the purpose that the government claimed for it because the officer could have just testified, I received a tip that this person was involved in selling drugs. And this is, you know, even far beyond being a large-scale drug dealer. There was testimony about the types of the drugs, the colors that each of the types of drugs corresponded to. I mean, it was far beyond this little statement that purportedly was the reason for it. I think the government's intent was for the detective's testimony to be more limited on this and to establish context for the jury about why they investigated Mr. Soto Sanchez. I think we acknowledge that the better practice would be not to have as much detail solicited for the jury. But the intent was that this would be testimony that was not admitted for its truth and it would be more limited. But the government was in charge of doing the direct examination. So it was in control of what questions were asked and how much information came in. So why did this happen? Well, I can't, it happened, we can't go back and undo that. I think the important point for this court in analyzing whether it's prejudicial or reversible error is what happened after that. And so what we have is we have a detailed limiting instruction from the court specifically telling the jury, you heard that testimony, you're not to consider that testimony. Are you saying that it is a Confrontation Clause issue but it's not prejudicial? I thought your argument was there was no Confrontation Clause problem. Did I misunderstand that? No, no, my argument is that there's no Confrontation Clause. You just said the question was whether it was prejudicial. Well, I'm saying that what the court has, the court's analysis in these cases is when there's testimony like this, the court says, this is from what the court said in Marr, we're concerned about whether the stated purpose for introducing the evidence masks an attempt to evade Crawford and the normal restrictions on hearsay. And I'm saying that if you do that analysis in this case, the court should find that there was no purpose to evade Crawford. And what the court has done, the analysis that the court has done in cases like this in Marr, in Cruz Diaz, in Cabrera Rivera, is look at how the evidence is used. How would the jury? What would we rely on for that? Just instructions is the only thing I could see, right? Well, no, you also look at how the government used the testimony. Used it in what they referred to it in later parts of the case. Right. And in this case, the government doesn't refer to this testimony at all. Okay. After the detective's testimony. That's the last thing that the jury hears about this. And I take it the right, if this is correct, the way to object to the overkill is under 403. That may be so. There may be an objection that it's overly prejudicial. That certainly wasn't made in this case. The argument wasn't made before the district court. It hasn't been briefed and argued before this court. The only objection that was made is a confrontation clause objection. It seems to me that you agree that the detective here testified far more broadly than he should have. Does that overkill? At first, I think I agree with you. It's not a confrontation clause problem if the detective says, I spoke with a confidential informant. She told me that there was drug dealing from this apartment, so I started my investigation. Right? That's how it's usually done. Here, that wasn't how it was done. So if you just have that first, it's not a confrontation problem. I think we're into, you know, what's the limiting instruction and we're done. But does that overkill somehow leak into a confrontation clause problem here? I want to make sure I understand here. Is your Honor's question, is it, can there be, is it one of degree? Like is there a certain amount that can't be overcome by a limiting instruction? I don't think so. I don't see that in any of this court's cases or any other cases. Well, that's what I guess we're trying to, do you read Maher to say you just look at the instruction, that's the end of it, once one's given. We now know the purpose for which it's used. It's not a confrontation. Or do we look at other things? You say, well, we should look at some other things. We should look at how the government used it. Okay. Then Judge Monacova's question is, can we also look at the reality of hundreds of pages of testimony, very detailed things that seem only plausibly relevant to proving it happened? Or are you saying, no, you can never look at that. It's only things you can look at is how the government used it and the instruction. I think that the three cases that I've found from this court look at whether there was a limiting instruction and whether the government, particularly in closing and rebuttal closing, drew the jury's attention back to the testimony that was the subject of the objection. And in Cabrera-Rivera, which was, that came after Maher 2009 decision from this court, there the court rejected the government's argument that the testimony put the investigation into context because the government made considerable use of the evidence in its closing to directly suggest that the out-of-court statements established the guilt of Cabrera-Rivera. We don't have any of that. This would be a different case, I acknowledge, if the government in closing said, you heard the testimony of the confidential informant. He testified that Mr. Soto Sanchez had these drugs and he was a drug dealer. The government didn't say anything about that. There was nothing said about this. The last thing that the jury heard was the court's limiting instruction telling them to disregard this evidence as substantive evidence. So it's essentially 17 lines out of a 400-plus page transcript. And the limiting instruction, I would submit, the defendant not only did not object to it, but didn't really ask for it. It was the court sua sponte that gave the limiting instruction. The defendant objects now to the timing of the court's instruction, but didn't ask for one to be done any sooner and seemed to be satisfied at trial with the timing and the content of the court's instruction. And as a matter of fact, in terms of timing, this court has actually said in a case called Mancini, so here the instruction came not immediately after the testimony came out, but at the conclusion of the detective's testimony. In Mancini, this court said waiting until the next day did not prejudice the defendant. If anything, the lapse of time aided in allowing the jury to forget what, in the context of a longer trial, was a de minimis incident. So I would say, if anything, there's case law that says that the timing of the instruction in this case was no less effective and maybe still as or more effective. Counsel, what I'm struggling with, though, is, you know, as Judge Montecalvo said, and this concerns me too, this was so far in excess of what was needed to be said. And your argument seems to be, well, the government can put in as much evidence as it wants. It can be, you know, 300 times what's necessary to show why the investigation began. And as long as there's a limiting instruction and you don't mention it closing, that's it, that there's no problem. And how could that be the rule? Well, I'm not saying that the government should, you know, have at it when it comes to this testimony. And I've acknowledged that. What's the constraint if it's not the confrontation clause? Sorry, your Honor? What is the constraint if it is not the confrontation clause? Well, I mean, your Honor has indicated that there could be a 403 objection to it. But the law as I understand it is. That's the constraint, right? Yes. It's 403, just like it is for 1,000 other things. Right. And, I mean, the limiting instruction, the juries are presumed to follow a court's instruction. So on this record, given that the jury was specifically instructed not to consider this a substance of evidence, yes, there's. . . But see, then I don't think the 403 thing is doing you all that much good at that point. Because for purpose of 403, we would look past the instruction, wouldn't we? Well, if the instruction was as given in this case, it might not take care of a 403. It might not. Right. Because. . . Well, because the instruction here was geared to the evidence being admitted for its truth. But. . . The 403 only works if you say, yeah, but it was way prejudicial because it overwhelmed it for all that. But if then you go back and say, no, you've got to follow the instruction. All of it was for the truth. What's the prejudicial part under 403? Well. . . And then it just dovetails, you might as well just do it under confrontation clause. It's the same inquiry for both. Right. Again, I think for the issue that's before this Court, whether there was a confrontation clause issue, which is the only issue that was raised, the only issue that was briefed, I think the limiting instruction was exactly what. . . No, but I think you're just missing the import maybe of what I was trying to get across. Maybe I am. Judge Rickleman's concern is if we take that position, then there would seem to be no constraint on the government just loading up as long as it wants, detail after detail, totally unnecessarily. Then one possible constraint is 403. But if 403 doesn't work because there's a limiting instruction, then there is no constraint. No, no. I'm not saying 403 doesn't work because there's a. . . I'm saying that. . . But then if we can look past it for 403 purposes, the limiting instruction. . . No. Again, we look past the limiting instruction for the confrontation clause. I'm not saying that the court could look past a limiting instruction for 403 purposes. If I said that, that's not. . . But if you can't, then you have the problem Judge Rickleman's identifying, which is then the government can just go on ad infinitum with this limiting instruction, with all this irrelevant detail that seems only relevant to the truth. I think that the quantum of evidence that is supposed in Judge Rickleman's hypothetical, there could conceivably be an objection that that goes beyond. . . If it's a relevance objection, that it goes beyond what was necessary. It's overly prejudicial. And the court would have to look at how that played out in that type of case to determine whether how the court dealt with it satisfied the court that it was not prejudicial error. That's not what we have in this case. I don't know if the court would like me to address. I see I'm. . . Could you just address the enhancement? Yes. I understand it has to be an unlawful or corrupt thing. So that's. . . Is there any reason to think if we don't tie the statement to money, just telling somebody don't speak, is that unlawful or corrupt? Well. . . If I don't agree with you about how you read that sentence. . . Right. Right. I don't. . . Well, my first response to that would be that unlawful is language that appears in the commentary to the guideline. It does not appear in the language of the guideline itself. And so I think the law is that if there's an inconsistency between the guideline and the commentary, the guideline itself controls. Is the government's position that there is such an inconsistency? Well, because the word unlawful. . . I mean, the appellant's entire argument about how there has to be something. . . Yes. Yes. So we just disregard the commentary? To the extent that on that issue, because it's inconsistent. So the word unlawful does not appear in the guideline itself. So it's an obstruction of justice just to tell someone not to talk. Yes. Yes. Telling a witness not to talk, don't say anything, is obstruction of justice. It has the natural tendency to suppress the truth. And I think that's what the guideline enhancement has in mind. The court only had to find by a preponderance of the evidence. In any criminal. . . The phrase obstruction of justice usually has some notion of corrupt action to it, right? Perhaps the criminal statute obstruction of justice. Was there any form of instruction other than this guideline, apparently, that doesn't import that, that you're aware of? No, but I haven't found a case and defend. . . That would be so wildly different from how it's used in all these other contexts in the criminal law. Well, I would say that the burden is on the appellant to show that obstruction of justice. . . The appellant hasn't cited a case involving the guideline enhancement that says that it has to be unlawful, that it has to be essentially tantamount to a conviction for obstruction of justice or witness tampering. And we're on plain error with respect to this issue in your view? Yes. Because they only objected to threats and the like below, not to the unlawfulness of. . . That's correct, Your Honor. Unless the court has any further questions, I'll submit on my brief. Thank you. Thanks. Thank you, counsel. That concludes argument in this case.